UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

CHRISTOPER CHIERCHIO and JASON KURLAND,

               Defendants.

**MEMORANDUM & ORDER**
20-CR-306 (NGG) (S-1)

NICHOLAS G. GARAUFIS, United States District Judge.

Following the return of a superseding indictment in this case, Defendants Jason Kurland and Christopher Chierchio move for reconsideration of the court's earlier ruling denying severance of their trials. For the following reasons, their motions are DENIED.

## I. BACKGROUND

The court assumes familiarity with the Government's theory of this case, which charges Kurland and Chierchio with frauds involving the winners of lottery jackpots. Trial is scheduled for July 11, 2022.

Earlier this year, the court granted Chierchio's motion to sever four extortion counts from the indictment under Federal Rule of Criminal Procedure Rule 8(b). (*See* February 22, 2022, Memorandum & Order ("Memorandum & Order") (Dkt. 147) at 2-10.) At the same time, it denied Kurland and Chierchio's motions for discretionary severance under Rule 14. (*Id.* at 10-17.) Now, Defendants renew those same motions after the court recently accepted a guilty plea from one of the four originally indicted co-Defendants, Frangesco Russo (another, Francis Smookler, had already pled guilty), and the Government re-charged the case naming only Kurland and Chierchio. (*See* Superseding Indictment (Dkt. 170).)

The new indictment reflects a more modest theory for the Government's case at trial: It concedes that prosecutors will no longer attempt to prove that Chierchio conspired with Kurland, Russo, and Smookler to defraud the lottery winners. Instead, prosecutors will seek to prove that Chierchio committed a related but separate fraud in misappropriating funds intended to be invested for the sale of personal protective equipment at the beginning of the COVID-19 pandemic. According to the Government, however, since those funds came from Kurland's lottery clients, the PPE scheme and the core lottery fraud are nonetheless "overlapping and inextricably linked" even if the entire group of participants "did not have a meeting of the minds to defraud the Lottery Victims together." (Gov't. Opp'n (Dkt. 187) at 5, 15.)

Despite its slimmed-down theory, the Government contends that a joint trial remains appropriate. Defendants Kurland and Chierchio disagree, arguing primarily that the court should revisit its earlier rulings because the two are no longer charged together in a single conspiracy.

The court has already thoroughly analyzed the legal standards under both rules and so discusses here only those circumstances that have changed by virtue of the new indictment. (*See generally* Memorandum & Order at 2-17.)

## II. DISCUSSION

### A. Rule 8

#### 1. Kurland's Motion

Kurland argues first that the new indictment is misjoined under Rule 8(b), which provides that an "indictment or information may charge [two] or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). As the court has previously explained, Rule 8(b) permits the joinder of multiple offenses allegedly committed by

2

multiple defendants where they are "unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003).[1]

### a. Substantial Identity of Facts or Participants

As to the first *Feyrer* standard, Kurland argues that the "Superseding Indictment alleges no conspiracy between Mr. Kurland and Mr. Chierchio" and "alleges no common conduct between them whatsoever." (Kurland Mot. (Dkt. 177) at 1.) Because the Government now charges "a general scheme involving Mr. Kurland" and another "separate scheme by Mr. Chierchio *alone* to defraud one or more of those same clients in the course of an investment into PPE," Kurland argues that "[t]he only commonality [between the two schemes] is the alleged victim(s)." (*Id.* at 3-4.) Like the extortion scheme involving Gregory Altieri that the court previously severed, Kurland claims that Chierchio's PPE fraud and the core lottery fraud (for which only Kurland will be tried since co-conspirators Russo and Smookler already pled guilty) have "different beneficiaries, different methods of generating purportedly illicit profits, and different purposes to which the funds at issue were put." (*Id.* at 4.)

These arguments are unpersuasive.

As a threshold matter, and as the court has previously noted, where multiple schemes are alleged, the formalistic membership of a single charged conspiracy "is not itself sufficient to end the Rule 8(b) analysis." (Memorandum & Order at 7.) Just as joining all defendants in a single conspiracy does not permit the joinder of unrelated schemes, the failure to join all defendants in a conspiracy does not forbid the joinder of other, related schemes.

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

3

What matters is whether the allegations speak to overlapping facts or participants or the existence of a common plan.

Conducting that factually intensive analysis demonstrates critical differences between the Government's earlier, misjoined, indictment and this one. As originally charged, the extortion scheme charged only Russo and Smookler with extending a "street loan" to Altieri, even though there was no allegation that the loan was made with funds from the lottery victims or made for the purpose of paying off losses Altieri incurred in the Ponzi scheme in which the same victims were invested. (*See id.* at 6.) Here, by contrast, Chierchio's PPE fraud was allegedly directly financed with funds Kurland obtained from the lottery fraud. Indeed, one of the purposes of the lottery fraud was allegedly to fund investments that could then be partially misappropriated: Kurland charged his clients a retainer for his legal advice but also allegedly received kickbacks from the investments he steered to his business partners, payments that potentially could not have been otherwise received (or at least would have been harder to conceal). Although Kurland's alleged lottery fraud may not have "*necessarily* led" to Chierchio's PPE fraud, the latter surely did "depend[] upon" the former, with "proof of the one act . . . constitut[ing] . . . proof of the other." *United States v. Halper*, 590 F.2d 422, 429 (2d Cir. 1978) (emphasis added).[2] The two schemes shared common sources of funds and victims (the lottery winners); beneficiaries (at least Kurland, Russo, and Smookler, because the lottery conspirators are alleged to have received not only proceeds from their own fraud but also kickbacks from Chierchio's);

---

[2] In contrast to the first indictment, the superseding indictment makes this link clear on its face, albeit barely. *See United States v. Rittweger*, 524 F.3d 171, 178 & n.3 (2d Cir. 2008). The superseding indictment charges Chierchio with "devis[ing] and execut[ing] a scheme to obtain money and property *from one or more of the Lottery Victims* for investments in personal protective equipment." (Superseding Indictment ¶ 8 (emphasis added); *but see* Indictment (Dkt. 1) ¶¶ 6-9.)

means (private investment); and logic (fraud). These circumstances have sufficient "substantial identity" as to satisfy Rule 8(b).

### b. Common Plan or Scheme

The indictment would likewise satisfy the second *Feyrer* test because the charges "arise out of a common plan or scheme." *Feyrer*, 333 F.3d at 114. That is because, as alleged, the roles of Kurland and Chierchio were each essential to the other. Kurland provided the legal expertise and relationship management necessary to convince his clients to trust him with their money; Chierchio provided the apparent business opportunity that parted them from it. Both were distinct frauds, but neither could succeed without the other. Each therefore "stemmed from" and "were part and parcel" of the other. *United States v. Turoff*, 853 F.2d 1037, 1044 (2d Cir. 1988).

Kurland's motion under Rule 8 is therefore DENIED.

### B. Rule 14

Both Defendants also renew their motions for discretionary severance under Rule 14.

#### 1. Kurland's Motion

Kurland makes three arguments to justify severance. First, he reiterates his argument that he plans to "act as a second prosecutor in th[e] case," a dynamic that he claims is made worse under the superseding indictment. (Kurland Mot. at 6.) Because Kurland intends to pin the blame on Chierchio, Russo, and Smookler, the risk of his "echoing the government's case" against Chierchio will be heightened by the fact that the two will no longer be jointly accused of the same conduct. (*Id.* at 7.) Kurland and Chierchio will no longer be shifting blame, the argument goes, so much as mutually piling it on. Second, Kurland claims that disparities in proof will be greater than before because the Government has

5

now implicitly conceded that it has less proof against Kurland (*i.e.*, it will no longer seek to prove that Kurland conspired with Chierchio to carry out the PPE fraud). Third, Kurland argues that, because he is no longer charged with conspiring with Chierchio, evidence of Chierchio's fraud has become "extrinsic" as against him and would be inadmissible in a trial of Kurland alone. (*Id.* at 7-8.)

The court rejects all three arguments.

As to the first, the risk of any possible conflict between defense strategies has not significantly changed. As Kurland continues to tell it, he will blame Chierchio, Russo, and Smookler; Chierchio, Russo, and Smookler will in turn blame him. As the Government points out, the superseding indictment only makes that job easier for both Defendants. With the Government alleging that each committed separate frauds, the jury may feel less forced to choose between them – *i.e.*, deciding that only one, and necessarily not the other, occurred. Moreover, the court will be more easily be able to deliver effective limiting instructions to the jury that clearly demarcate the different conduct of which Kurland and Chierchio are accused: for one, the lottery fraud, and for the other, the PPE fraud.

Second, any "disparities in the degrees of involvement by defendants in the overall scheme" are also diminished by the superseding indictment. *United States v. Guillen-Rivas*, 950 F. Supp. 2d 446, 457 (E.D.N.Y. 2013). Whatever disparities in proof may have existed in the first indictment due to the varying frequencies with which Defendants appear in the Government's anticipated wiretap evidence, the superseding indictment appears to diminish any relative disparity as to each Defendant's involvement *in the overall scheme* by more clearly distinguishing between their roles. So it matters little that "insufficient evidence exists to show Mr. Kurland was involved in Mr. Chierchio's alleged offenses," precisely because Kurland is no longer charged

6

in those offenses. (Kurland Mot. at 7.) Moreover, neither Kurland nor Chierchio feature in the wiretap evidence as frequently as Russo and Smookler, and both of those Defendants – each of whom pled guilty – will presumably testify against both Kurland and Chierchio alike. These factors, combined with the mutually reinforcing nature of the two frauds in the bigger picture of the overall scheme, suggest that neither Chierchio nor Kurland will overshadow the other in terms of alleged involvement or amount of proof.

Third, Kurland claims that evidence of Chierchio's fraud would be inadmissible against him in separate trials without an adjoining conspiracy charge. That is unlikely. Because the court has already held (at least for the purposes of Rule 8(b)) that the two schemes, if separate, are inextricably linked, "other acts" evidence regarding the PPE fraud would likely be admissible notwithstanding Rule 404(b) because it arises "out of the same transaction or series of transactions as the charged offense . . . [,] is inextricably intertwined with the evidence regarding the charged offense, or . . . is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *see also United States v. Pitre*, 960 F.2d 1112, 1118 (2d Cir. 1992) (observing the Circuit's "inclusionary" approach to Rule 404(b)).

Finally, and more generally, the court notes that the other *Guillen-Rivas* factors cut more deeply against severance in the second indictment as compared to the first. *See* 950 F. Supp. 2d at 457. The number of defendants has fallen from three to two and the number of counts from seventeen to seven. The indictment has become less complex, charging five counts against Kurland and

7

two against Chierchio – rather than four different groupings of four different Defendants.[3]

After re-weighing all of the changed *Guillen-Rivas* factors, the court continues to conclude that severance is not justified. Kurland's motion is therefore DENIED.

### 2. Chierchio's Motion

Chierchio's motion covers much the same ground as Kurland's. He argues that trying Chierchio with Kurland justifies severance under Rule 14 because (1) Chierchio is not charged in the core lottery conspiracy alongside Kurland, Russo, and Smookler; and (2) Kurland is a lawyer, and he is not, and "society may oft think ill of attorneys." (Chierchio Mot. (Dkt. 175) at 2.)

But, again, the court has already held that the complexity of the Government's case and the risk of jurors confusing issues despite the use of limiting instructions does not justify severance in this case. The Government's simplified superseding indictment makes it *less* likely that "Chierchio will be subjected to a lengthy trial in which the majority of the evidence will be about a conspiracy in which he is not charged." (*Id.* at 4.)

Chierchio's argument as to society's prejudice against lawyers is without merit. It pales, in any case, with the one that Kurland might make against Chierchio, himself an alleged "soldier" in the Genovese crime family. Neither warrants severance.

Chierchio's motion is DENIED.

---

[3] And those permutations exclude the previously severed extortion charges.

## CONCLUSION

For the foregoing reasons, Chierchio's [174] and Kurland's [176] motions for severance are DENIED.

SO ORDERED.

Dated:   Brooklyn, New York
         June 7, 2022

                                           s/Nicholas G. Garaufis
                                           _____
                                           NICHOLAS G. GARAUFIS
                                           United States District Judge