

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 20, 2022

**BY ECF**

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza Easy
Brooklyn, New York 11201

      Re:    *United States v. Jason Kurland*, S1 20 Cr. 306 (NGG)

Dear Judge Garaufis:

As discussed in court today, the Government respectfully submits this letter motion to preclude certain former clients that the defendant seeks to call to show "good acts" of disclosure in the defendant's case in chief. The Government respectfully submits that these clients' expected testimony is irrelevant to the issues in this case and would unduly prejudice and confuse the jury.

## Background

The defense has recently provided the Government with a series of names regarding prospective witnesses, which the Government discusses in brief below, based on the information currently available to it[1]:

**Brandon Lacoff:** Brandon Lacoff ("Lacoff") is one of three winners that claimed a $254 million Powerball lottery in Connecticut, in 2011. Lacoff and his partners claimed the prize under the name the "Putnam Avenue Trust." Lacoff apparently was a client of the defendant, although the Government has not been able to locate information to that effect. There is no evidence that Lacoff invested in any Merchant Cash Advance entity associated with the defendant.

**Elizabeth Chen:** Elizabeth Chen ("Chen") is an individual that is believed to be an investor (likely a real estate client of the defendant), but was not a lottery winner. The defendant met Chen approximately eight years ago, when the defendant was the lawyer for Chen's company. Chen agreed to invest $500,000 into Cheddar Capital ("Cheddar") on December 23, 2016. Chen then placed another $500,000 into JBMML on November 6, 2018.

**Belinda Poblete:** Belinda Poblete ("Poblete") is a lottery winner that retained the defendant when he was an attorney at Certilman Balin, the defendant's former law firm. The

---

[1] To date, despite its requests, the Government has not received any Rule 26.2 materials for these proposed witnesses from the defense.

defendant encouraged Poblete to invest in Cheddar Capital. On August 5, 2016, Poblete invested $100,000 in Cheddar. On December 13, 2016, Poblete invested another $100,000 into Cheddar; and on August 6, 2018, Poblete invested a third $100,000 into Cheddar.

**Witness-1**: Witness-1[2] is a lottery winner that was a client of the defendant and Certilman Balin, the defendant's former law firm. Based on documents provided to the Government, Witness-1 won a $5 million scratch off prize, and paid the defendant a $7500 one-time retainer. Witness-1 invested $100,000 into Cheddar Capital, on October 17, 2016. In addition, Witness-1 is a resident of Florida, and unvaccinated, and by letter dated July 19, 2022, the defendant requests that Witness-1 be allowed to testify remotely.

## Argument

In its Order dated July 11, 2022, the Court ruled that "Kurland may introduce evidence that he disclosed his interests in the entities to the alleged victims and to other clients, but not to other professionals." (Order at 40, Dkt. No. 228). The Court also ruled that, "[t]o the extent that Kurland intends to question witnesses about disclosures were material in their decisions to invest or not, these questions are only appropriate for witnesses who are similarly-situated to the alleged victims." (*Id.*).

The alleged fraud scheme in this case started in late 2018. Specifically, the Government alleges that the defendant negotiated with his business partners to receive secret 1% kickbacks in exchange for bringing in investments by his lottery clients. The conspirators first hatched this scheme in or about September 2018, and first implemented this scheme on or about October 2, 2018, when the defendant received his first kickback, $50,000, following Lottery Victim-1's $5M investment in Cheddar Capital. The Government does not allege that any of the defendant's lottery clients were defrauded prior to this period. Nor does the Government allege that the defendant defrauded any individuals who were not his lottery clients.

The Government notes that, in the parties' motions *in limine* briefing, neither party raised the issue of the indictment time period and how it relates to any potential defense witnesses. The Government respectfully submits that evidence from other lottery clients who hired the defendant and made investments that pre-date the charged conduct is irrelevant and should be precluded under Rule 403 as unduly prejudicial and likely to confuse the jury. Put simply, testimony from a client who hired the defendant and invested before the scheme was hatched has no bearing on any issues before this jury. In particular, it would not bear on the question of materiality because the defendant and his co-conspirators had not yet conceived of the kickback scheme. Based on the Government's investigation, the defendant did not receive any kickbacks from any of the investments made by the four proposed defense witnesses. By definition, then, the defendant could not have told these clients about any kickbacks, rendering their testimony irrelevant to the materiality (or any other issues) issues before this jury. These witnesses, therefore, are not

---

[2] Witness-1 is identified as such in the defendant's July 19, 2022 letter (Dkt. No. 233), which seeks Witness-1's testimony by remote means, because he lives in Florida.

similarly situated to the victims in this case and their testimony should be precluded.[3] The sole purpose of calling these witnesses appears to be to show the defendant's purported propensity to make disclosures to his clients, in order to call into question the testimony of the victims in this case. That is improper and should not be allowed.

In *United States v. Damti*, 109 F. App'x 454, (2d Cir. 2004), the Second Circuit affirmed this Court's preclusion of evidence of the defendant's honest services unrelated to the charged conduct. *Id.* at 455–56 ("Evidence of past 'good acts' by a defendant is generally not probative"). Specifically, the Court noted that the Government had argued not that every move was fraudulent, but that only "ten specific moves," defrauding "ten specific customers" were. *Id.*; *see also United States v. Dawkins*, 999 F.3d 767, 792 (2d Cir. 2021) ("The district court did not abuse its discretion in refusing to allow testimony regarding Dawkins's relationships with coaches whom he did not bribe.").

In *United States v. Thomas*, 581 F. App'x 100 (2d Cir. 2014), a defendant who was charged with embezzling funds from a Native American tribe offered evidence of past repayments in the two-year pre-indictment period to show his intent to make future repayments. The district court rejected that argument, finding that "any evidence that Defendant did reimburse the Tribe for personal expenses improperly charged on his official credit card *prior to the time period charged in the Indictment* is impermissible propensity evidence and not otherwise relevant charged conduct, and therefore will be excluded." *United States v. Thomas,* No. 3:13CR4 JBA, 2013 WL 6073581, at *1 (D. Conn. Nov. 18, 2013) (emphasis added). The Second Circuit affirmed, finding that the "evidence at issue was not relevant to any fact of consequence, and that the purported probative value of that evidence was substantially outweighed by the danger of confusing and misleading the jury." *Thomas*, 581 F. App'x at 103.

In sum, testimony by the four proposed defense witnesses would be irrelevant to any of the issues before the jury and would result in undue prejudice and confusion of the issues. The Government respectfully requests that the Court preclude these proposed witnesses

---

[3] The Government respectfully submits that Elizabeth Chen is not similarly situated for the additional reason that she is not a lottery client.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    /s/_____
Olga I. Zverovich
Danielle M. Kudla
Louis A. Pellegrino
Special Attorney Acting Under Authority
Conferred by 28 U.S.C. § 515

Brian D. Morris
Assistant United States Attorney
Eastern District of New York